AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| United States of America<br>v.<br><br>BRAD WOZNIAK<br><br>*Defendant(s)* | )<br>)<br>) Case No. 17-236M<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____July 13, 2016_____ in the county of _____New Castle_____ in the _____ District of _____Delaware_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Unlawful distribution of controlled substances |

This criminal complaint is based on these facts:
See attached Affidavit.

FILED
NOV 30 2017
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

☑ Continued on the attached sheet.

_____
*Complainant's signature*
Task Force Officer Paul Lawrence
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/30/17

_____
*Judge's signature*

City and state: Wilmington, Delaware

Hon. Mary Pat Thynge, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## INTRODUCTION

Your affiant, Paul W Lawrence II, being duly sworn, deposes and states as follows:

1. I am employed as a Task Force Officer ("TFO") with the Drug Enforcement Administration, United States Department of Justice, and have been so employed since 2013. As a TFO with the DEA, I conduct criminal investigations concerning alleged violations of the federal narcotics laws. I have acquired knowledge and experience as to narcotics and narcotics trafficking due to investigations, research, investigative experience, and training.

2. I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been assigned as a TFO with the Wilmington, Delaware Resident Office of the DEA since August 2013. I am presently a Detective within the Newark Delaware Police Department Special Investigations Unit (August 2013 - Present). Before that, I served as a Patrol Officer with the Newark Delaware Police Department (March 2011 - August 2013).

3. During my employment as a law enforcement officer, I have received training in connection with the identification, manufacture, and distribution techniques of illegal drugs, including heroin. I have attended several schools and seminars that specialized in all aspects of narcotics investigations, including the following: 1) Cultivation and Management of Confidential Informants; 2) General Narcotics Investigation; and 3) Electronic Surveillance Techniques.

4. During my employment as a DEA TFO, I have personally participated in over 50

narcotics investigations, including three wiretap investigations. I continue to keep abreast of current trends and practices of drug traffickers by reading periodicals, intelligence reports, and training literature. I also have daily contact with other federal agents, TFOs, and law enforcement personnel, as well as confidential informants and sources of information, in order to remain up-to-date with current trends of narcotics traffickers.

5. During my time as a law enforcement officer, I have personally interviewed in excess of 100 drug users, and have interviewed or witnessed the interview of in excess of an additional 50 drug dealers. The drugs involved in the majority of these interviews were cocaine, heroin, and/or marijuana. These interviews continue to allow me to remain up-to-date about how illegal drugs are used, packaged, transported, secreted, and sold, and the common coded language that illegal drug dealers and their customers use to conduct transactions.

6. The facts set forth in this affidavit are based upon my personal knowledge obtained during my participation in this investigation, review of documents, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, this affidavit does not set forth each and every fact learned by me or other agents during the course of this investigation.

## DETAILS OF THE INVESTIGATION

7. On July 14, 2016, a man referred to herein only as "Victim" was found dead inside his apartment in Newark, Delaware. When police arrived, Victim was in his bedroom lying on his bed with his cellular telephone in his right hand. Law enforcement officers from Newark Police Department ("NPD") (located in Delaware) began investigating his death.

8. Officers from NPD found a laptop computer to the right of Victim. On top of the laptop was a rolled up $1.00 bill and a casino card. The casino card and laptop had a white powder residue covering their surface. Additionally, a small plastic baggie was located on top of an amplifier next to Victim's bed. In my training and experience, the baggie was of a type and size that, in my training experience, commonly contains heroin. I am aware, from my training and experience, that users of narcotics often use cards – like credit cards, business cards, or like the casino card in this case – to push the drugs into a "line," before using rolled up currency or other cylindrical items to snort the drugs.

9. I am also aware that within the last few years, drug dealers have begun "cutting" – or mixing – their heroin with an opiate known as fentanyl, a Schedule II controlled substance. Fentanyl is significantly more potent than heroin. On occasion, drug dealers disguise fentanyl as heroin and sell heroin users fentanyl without their knowledge. Also, because drug dealers mix fentanyl with heroin in a haphazard way, it is possible for some baggies to contain more fentanyl or more heroin than other baggies, or even for some baggies to be entirely fentanyl.

10. A further search of Victim's residence led to the discovery of two blue wax paper baggies, also commonly containing heroin, lying on top of trash in the kitchen. One of the blue wax paper bags was stamped "SRT" and the other was stamped "El Chapo." In my training and experience, it is common for heroin dealers to place stamps on heroin baggies that serve as the brand name of the heroin.

11. A safe was located in Victim's closet that contained several baggies of purported heroin stamped "El Chapo." The "El Chapo" baggies and the SRT baggie were sent to the DEA's lab. The SRT baggie, which was empty, contained only residue, which was insufficient to allow for testing. Some of the "El Chapo" baggies found at the scene tested positive for the

presence of heroin and fentanyl.

12. A Detective interviewed the Victim's girlfriend, Person 1, and learned that the Victim began using heroin over the past month. Person 1 advised that during the night of July 13, 2016 into the early morning of July 14, 2016, she was engaging the Victim in a text message conversation. During that text message conversation the Victim advised Person 1 that he had ingested heroin.

13. Agents and officers recovered the Victim's cell phone. Text messages in the Victim's phone arranged the purchase of heroin from "BRAD" on July 13, 2016. A relevant portion of their ongoing conversation was as follows:

BRAD: How many srt do you want? Just 1? Bc im going to pick more of them up now
Victim: yeah just one to try
BRAD: Ill be there by 3
Victim: All right in here

In my training and experience, when "BRAD" asked "how many srt do you want?" he was asking the Victim how many baggies of heroin stamped "SRT" he wanted to purchase. The Victim responded, "just one to try" meaning that he only wanted one baggie. The two agreed to meet at 3:00. When law enforcement found the Victim's body the day after this conversation, as mentioned above, there was one "SRT" baggie found in the Victim's apartment.

14. The defendant, Brad Wozniak ("WOZNIAK") was arrested in connection with an unrelated case on August 15, 2016 by the New Castle County Police Department ("NCCPD"). At the time of his arrest, he was in possession of the telephone that uses telephone number 302-983-5417 (the phone number that was in the Victim's phone as "BRAD").

15. Agents interviewed WOZNIAK on September 12, 2016. He admitted that he sold drugs to the Victim on July 13, 2016 in a baggie stamped "SRT," and that he sold him drugs stamped "El Chapo" a few days before that. He admitted that he distributed those drugs to the

Victim in New Castle County, Delaware. WOZNIAK also admitted that he had a "good idea" that the drugs he was providing to the Victim contained fentanyl.

## CONCLUSION

16. Based upon the foregoing, your Affiant submits that probable cause exists to believe that WOZNIAK distributed a mixture and substance containing a detectible amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) on July 13, 2016.

Paul W Lawrence II
Task Force Officer
Drug Enforcement Administration

Sworn and subscribed
to before me this
30 day of November, 2017.

United States Magistrate Judge

5